UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BEVERLY K. CARNEAU,

        Plaintiff,

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

Civil No. 08-094-HA

OPINION AND ORDER

HAGGERTY, District Judge:

        Plaintiff Beverly K. Carneau seeks judicial review of a final decision by defendant Commissioner denying plaintiff's application for Disability Insurance Benefits (DIB). This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is affirmed.

**STANDARDS**

1 - OPINION AND ORDER

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Additionally, for the purposes of DIB, a plaintiff has the burden of proving disability prior to the termination of his or her insured status. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920.

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to the second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment or impairments are equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe impairments which qualify as severe enough to be construed as *per se* disabling. 20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings for a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC), which is the most an individual can do in a work setting despite the total limiting effects of all their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p.

The Commissioner then proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step and determines if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof at steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, so long as one of the interpretations supports the decision of the Administrative Law Judge (ALJ). *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances where the evidence supports either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720.

**BACKGROUND**

The relevant background has been presented thoroughly by the parties and in the ALJ's decision. Plaintiff was fifty-three years old at the time the ALJ rendered the decision. Plaintiff has past work experience as a claims analyst and claims adjuster.

Plaintiff applied for DIB on January 11 2005, alleging disability beginning January 10, 2005. This application was denied initially and upon reconsideration. On June 22, 2007, the ALJ held a hearing and heard testimony from plaintiff, medical expert David R. Rullman, M.D., and vocational expert (VE) Jenipher S. Gaffney. On August 2, 2007, the ALJ issued a decision that denied plaintiff's application. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff seeks judicial review of this decision. Specific medical facts and background will be addressed as required by the parties' legal arguments.

**SUMMARY OF THE ALJ'S FINDINGS**

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since the alleged onset of her disability. Transcript of Record (hereinafter "Tr.") 16, Finding 2.

At Step Two, the ALJ found that plaintiff had severe impairments, including "status post-lumbar laminectomy, status post T4-L4 fusion, status post Harrington's rod for scoliosis, diabetes, and hypertension." Tr. 16, Finding 3.

At Step Three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 18, Finding 4.

At Step Four, the ALJ found that plaintiff was able to perform her past relevant work. Tr. 20, Finding 6. The ALJ so found after determining that plaintiff had the RFC to walk two blocks using a cane, stand for fifteen minutes, sit for one hour, lift ten pounds frequently, push and pull office equipment, climb six steps, and had normal hand use. Tr. 18, Finding 5. The ALJ also found that plaintiff has average memory with a mild impairment of concentration due to back pain, has a loss of stamina from depression, was able to work at ninety percent of her normal capacity, and would have both panic attacks and dizziness once a week for around fifteen minutes each. *Id*.

Because plaintiff was able to perform her past relevant work, the ALJ did not engage in the Step Five inquiry into whether plaintiff could perform other jobs that existed in significant numbers in the national economy.

## DISCUSSION

Plaintiff contends that this court should reverse the Commissioner's final decision and remand for payment of benefits, or, in the alternative, remand for further consideration of the evidence because: (1) the ALJ erred at Step Two and Step Three by not considering all of plaintiff's impairments; (2) the ALJ improperly treated the medical testimony of David S. Hindahl, M.D.; and (3) the VE failed to state whether her testimony was consistent with the Dictionary of Occupational Titles.

**1.     Step Two and Step Three**

Plaintiff argues that the ALJ failed to make severity findings at Step Two regarding plaintiff's personality disorder, depression and anxiety, and ankylosing spondylitis. An

impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

The ALJ noted that John D. Adler, M.D., had assessed a "rule-out" of personality disorder. Tr. 17, 187. This court finds no reason to reject the common sense assumption that "rule-out" means to exclude or eliminate something from consideration. In addition, there is no basis for a diagnosis of personality disorder in Dr. Adler's treatment notes, which indicate that plaintiff's "social interaction was good" other than "social avoidance (not constant, but only when depressed)." Tr. 186. Other physicians also failed to diagnose personality disorder. Paul Rethinger, Ph.D., found that plaintiff displayed "good social interaction skills" and did not diagnose personality disorder. Tr. 189, 201. Dorothy Anderson, Ph.D., reviewed plaintiff's psychiatric profile and failed to diagnose personality disorder. Tr. 224. Given both the "rule-out" of personality disorder by Dr. Adler and the lack of medical support for such a diagnosis, the ALJ was under no obligation to make a severity finding as to plaintiff's alleged personality disorder.

Plaintiff argues that the ALJ made no finding as to the severity of plaintiff's anxiety, and erroneously found plaintiff's combination of depression and anxiety to be non-severe. This argument is without merit. The ALJ properly discussed plaintiff's "depression and anxiety," applying the four functional areas that the Listings set forth for evaluating mental disorders. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(C) ("We assess functional limitations using the four criteria in paragraph B of the listings: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."). The ALJ found that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild'

7 - OPINION AND ORDER

limitation in any of the first three functional areas and 'no' limitation in the fourth area, they are nonsevere." Tr. 17 (citation omitted). This court concludes that the ALJ considered plaintiff's anxiety and depression and was justified in finding that they did not significantly limit her ability to do basic work activities.

Plaintiff argues that it is "evident that the ALJ has erroneously confused [ankylosing spondylitis] with scoliosis, and his Step 2 finding is flawed and incomplete as a result." Pl.'s Opening Brief at 14. To support this argument, plaintiff identifies the ALJ's statement that Dr. Hindahl's disability assessment was based on plaintiff's "long-term and severe scoliosis (ankylosing spondylitis)." Tr. 20. Plaintiff contends that the ALJ's use of a parenthetical shows the ALJ believed scoliosis and ankylosing spondylitis to be the same condition. Plaintiff also points out that the ALJ mentioned plaintiff's scoliosis at Step Two but did not make a severity finding as to her ankylosing spondylitis.

Although the ALJ did not specifically discuss plaintiff's ankylosing spondylitis at Step Two, the ALJ did mention that "x-rays confirmed scoliosis and ankylosing spondylitis." Tr. 16. Furthermore, any alleged error at Step Two was rendered harmless at Step Three and Step Four by the ALJ's discussion.

At Step Three, the ALJ concluded that plaintiff's back problems did not meet or medically equal any listed impairment, including Listing 1.04 – *Disorders of the Spine*. If a claimant has more than one impairment, the Commissioner must determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). This finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3). Moreover, "[a]n ALJ is not required to discuss the combined effects of a

8 - OPINION AND ORDER

claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

In this case, the ALJ stated that plaintiff did not meet the criteria for Listing 1.04 because there was "no evidence of nerve root or spinal cord compromise." Tr. 18. Even if the ALJ did not consider plaintiff's ankylosing spondylitis at Step Three, plaintiff has not shown that any medical evidence – whether related to scoliosis or ankylosing spondylitis – contradicts this finding. In addition, plaintiff has not offered a plausible theory as to how her combined impairments of scoliosis and ankylosing spondylitis were medically equivalent to Listing 1.04 or any other listed impairment. Accordingly, the ALJ's failure to specifically discuss ankylosing spondylitis at Step Three is harmless.

Any alleged error at Step Two is also rendered harmless by the ALJ's analysis at Step Four. *See Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007). In *Lewis*, the ALJ determined at Step Two that the plaintiff had a severe impairment due to a laminectomy and diabetes mellitus. *Id*. at 910. The ALJ, however, did not mention the plaintiff's bursitis during the Step Two discussion. *Id*. at 911. On appeal, the Ninth Circuit pointed out that the ALJ extensively discussed the plaintiff's bursitis at Step Four and incorporated relevant limitations into the RFC. *Id*. "As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless." *Id*.

Here, the ALJ properly incorporated all relevant limitations into the RFC at Step Four. The ALJ, recognizing the seriousness of plaintiff's scoliosis and lower back problems, constructed a very limited RFC that limited plaintiff to walking two blocks using a cane, standing for fifteen minutes, sitting for one hour, lifting ten pounds frequently, pushing and

claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

In this case, the ALJ stated that plaintiff did not meet the criteria for Listing 1.04 because there was "no evidence of nerve root or spinal cord compromise." Tr. 18. Even if the ALJ did not consider plaintiff's ankylosing spondylitis at Step Three, plaintiff has not shown that any medical evidence – whether related to scoliosis or ankylosing spondylitis – contradicts this finding. In addition, plaintiff has not offered a plausible theory as to how her combined impairments of scoliosis and ankylosing spondylitis were medically equivalent to Listing 1.04 or any other listed impairment. Accordingly, the ALJ's failure to specifically discuss ankylosing spondylitis at Step Three is harmless.

Any alleged error at Step Two is also rendered harmless by the ALJ's analysis at Step Four. *See Lewis v. Astrue*, 498 F.3d 909 (9th Cir. 2007). In *Lewis*, the ALJ determined at Step Two that the plaintiff had a severe impairment due to a laminectomy and diabetes mellitus. *Id*. at 910. The ALJ, however, did not mention the plaintiff's bursitis during the Step Two discussion. *Id*. at 911. On appeal, the Ninth Circuit pointed out that the ALJ extensively discussed the plaintiff's bursitis at Step Four and incorporated relevant limitations into the RFC. *Id*. "As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless." *Id*.

Here, the ALJ properly incorporated all relevant limitations into the RFC at Step Four. The ALJ, recognizing the seriousness of plaintiff's scoliosis and lower back problems, constructed a very limited RFC that limited plaintiff to walking two blocks using a cane, standing for fifteen minutes, sitting for one hour, lifting ten pounds frequently, pushing and

pulling office equipment, and climbing six steps. The ALJ also incorporated plaintiff's anxiety and depression, recognizing that plaintiff would have a loss of stamina from depression, was only able to work at ninety percent of her normal capacity, and would have both panic attacks and dizziness once a week for around fifteen minutes each.

The only limitations that the ALJ did not incorporate into the RFC were those assigned to plaintiff by Dr. Hindahl. As is discussed below, the ALJ was entitled to discount Dr. Hindahl's disability assessment because it was largely based on plaintiff's subjective complaints. Accordingly, this court concludes that the RFC incorporated all limitations for which there was evidentiary support. Because plaintiff's RFC incorporated limitations related to her anxiety, depression, and ankylosing spondylitis, this court concludes that any alleged error at Step Two is harmless.

### 2. Medical Testimony

Plaintiff argues that the ALJ improperly rejected the opinion of treating physician Dr. Hindahl, who indicated that plaintiff was disabled due to scoliosis and ankylosing spondylitis. Although the testimony of treating physicians deserve a great deal of weight, their opinions are not conclusive as to either a medical condition or the ultimate issue of disability. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). If uncontradicted, the opinion of a treating physician can only be rejected for "clear and convincing reasons." *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981). Where the opinion of the claimant's treating physician is contradicted by another physician, the ALJ must provide "specific, legitimate reasons" for rejecting the treating source based on "substantial evidence" in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

As noted in the ALJ's decision, Dr. Hindahl's disability assessment was contradicted by examining physician Nathan Magaret, M.D. In March 2005, Dr. Magaret opined that plaintiff could stand and walk for four hours in an eight-hour workday, and could sit for six hours in an eight-hour workday. The court notes that the RFC developed by the ALJ is more restrictive than the one constructed by Dr. Magaret.

The ALJ gave "some weight" to Dr. Hindahl's disability assessment, but discounted it because it was "based primarily on claimant's subjective limitations." Tr. 20. Disregarding a physician's testimony because it is significantly based on a plaintiff's subjective reports constitutes a specific, legitimate reason for rejecting the opinion of a treating physician. *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). In *Fair v. Bowen*, the Ninth Circuit found that the ALJ properly disregarded a physician's opinion that was "'premised to a large extent upon the claimant's own accounts of his symptoms and limitations.'" 885 F.2d at 605 (quoting the ALJ's decision). In *Tonapetyan v. Halter*, the Ninth Circuit held that the ALJ properly rejected the opinion of a physician who "relied only on [the plaintiff's] subjective complaints and on testing within [the plaintiff's] control." 242 F.3d 1144, 1149 (9th Cir. 2001).

A cursory review of Dr. Hindahl's treatment notes reveal that his disability assessment was largely based on plaintiff's subjective reports: e.g., plaintiff "is here today to talk about her disabling condition"; plaintiff "would say that her #1 disabling condition is her Ankylosing Spondylitis"; and plaintiff "states that the absolute maximum [amount] of time she can sit is 2 hours" before she has to elevate her feet. Tr. 236. Although plaintiff indicated that she could not sit for more than two hours before suffering muscle spasms, this is the only time in the record that plaintiff reported such a limitation to a medical provider.

11 - OPINION AND ORDER

Plaintiff claims that there was objective support for Dr. Hindahl's disability assessment, including physical examinations and x-rays. Plaintiff's argument is unpersuasive. While Dr. Hindahl mentions some objective support for plaintiff's complaints, including the placement of Harrington's rods and other back surgeries, his disability assessment is clearly predicated on plaintiff's reports of disabling pain and discomfort, including her claim that she could not sit for more than two hours at a time. To the extent that Dr. Hindahl's opinion was based on objective evidence including physical examinations and medical testing, such evidence was already included in the RFC constructed by the ALJ. To the extent that Dr. Hindahl's opinion was based on the subjective reports of plaintiff, however, it was properly disregarded by the ALJ as unsupported by objective evidence. Because Dr. Hindahl's opinion was premised to a large extent upon plaintiff's own accounts of his symptoms and limitations, the ALJ provided a specific, legitimate reason for discounting the testimony of a treating source.

### 3. VE Testimony

At Step Four of the sequential process, the ALJ found that plaintiff could perform her past relevant work as a claims analyst and claims adjuster. The ALJ relied upon the opinion of the VE, who testified that someone with plaintiff's RFC could perform both of those jobs. Tr. 370.

Plaintiff argues that the ALJ's reliance on the VE is flawed because the VE was not asked whether the requirements of the claims analysts and claims adjuster positions were consistent with the Dictionary of Occupational Titles (DOT). Although the ALJ stated in the decision that the VE's testimony was consistent with the information in the DOT, the transcript of the hearing

contradicts this assertion. In fact, the VE stated at the hearing that her formulation of the claims adjuster position was not consistent with the DOT. Tr. 370.

Social Security Ruling 00-4p states that: "When a VE [] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE [] evidence and information provided in the DOT." SSR 00-4p, *available at* 2000 WL 1898704. "SSRs reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005)); *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (acknowledging that "Social Security Rulings do not have the force of law" but that courts "defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Act or regulations").

In *Massachi v. Astrue*, the Ninth Circuit addressed:

> whether, in light of the requirements of SSR 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]. We hold tha[t] an ALJ may not.

486 F.3d 1149, 1152 (9th Cir. 2007) (footnote omitted). Citing *Massachi*, plaintiff argues that the ALJ erred because he did not ask whether any conflict existed between the VE's testimony regarding the claims analyst and claims adjuster positions and the information provided in the DOT.

An ALJ is not required to obtain VE testimony at Step Four. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (observing that the claimant's failure "to show that he was unable to return to his previous job as a receiving clerk/inspector," rendered the VE's testimony "useful,

13 - OPINION AND ORDER

but not required").  At Step Four, past relevant work can be considered either as generally performed or as the plaintiff actually performed it.  *See* SSR 82-61, *available at* 1982 WL 31387.  An ALJ can rely upon DOT descriptions in deciding "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the jobs as ordinarily required by employers throughout the national economy."  *Id*.  However, an ALJ can also consider "[w]hether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it."  *Id*.

      Here, the ALJ determined that plaintiff retained the capacity to perform the functional demands and job duties of a claims analyst and claims adjuster, as she actually performed those positions.  Although not required to seek expert testimony at Step Four, the ALJ nevertheless consulted with the VE to determine whether a person with plaintiff's RFC could perform her past relevant work as it was actually performed.  Requiring the VE to consult the DOT in such a situation is nonsensical: the DOT addresses work as it is generally performed in the national economy.  Indeed, the VE noted that the DOT defines claims adjuster as a "light job," even though "the file materials reflect that [it] was performed more consistently with sedentary work."  Tr. 370.  Because the ALJ was inquiring whether plaintiff could perform past relevant work as she actually performed it, this court concludes that the ALJ was not obligated to determine whether the VE's testimony was consistent with the DOT.

/ / / /

/ / / /

/ / / /

/ / / /

14 - OPINION AND ORDER

**CONCLUSION**

Based on the foregoing, the findings of the Commissioner are based upon the correct legal standards and are supported by substantial evidence in the record. The final decision of the Commissioner denying plaintiff Beverly K. Carneau's application for benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this   30   day of March, 2009.


   /s/ ANCER L. HAGGERTY
ANCER L. HAGGERTY
United States District Judge

15 - OPINION AND ORDER